NICOLA T. HANNA
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
CHARLES E. PELL (Cal. SBN 210309)
Assistant United States Attorney
Santa Ana Branch Office
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3542
    Facsimile: (714) 338-3561
    E-mail:   charles.e.pell2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | No. SA CR 16-00073(A)-AG |
|---|---|
| Plaintiff, | **GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT KAREN POGOSIAN** |
| v. | |
| KAREN POGOSIAN, | Hearing Date: February 5, 2018 |
| Defendant. | Hearing Time: 3:00 p.m. |
| | Location:   Courtroom of the Hon. Andrew J. Guilford |

    Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Charles E. Pell, hereby files its sentencing position for defendant KAREN POGOSIAN.

    This sentencing position is based upon the attached memorandum of points and authorities, the attached two exhibits, the files and
///

records in this case, and such further evidence and argument as the Court may permit.

Dated: January 23, 2018        Respectfully submitted,

                               NICOLA T. HANNA
                               United States Attorney

                               DENNISE D. WILLETT
                               Assistant United States Attorney
                               Chief, Santa Ana Branch Office


                               /s/ *Charles E. Pell*
                               CHARLES E. PELL
                               Assistant United States Attorney
                               Santa Ana Branch Office

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On September 25, 2017, pursuant to a written plea agreement (DE 40), defendant pleaded guilty to counts 2 (bank fraud) and 21 (aggravated identity theft) of the First Superseding Indictment. (DE 44 (minutes of change of plea hearing).)

On November 3, 2017, the United States Probation Office disclosed defendant's Presentence Investigation Report ("PSR"). (DE 45.) The Probation Office determined that defendant's total offense level is 18 and his criminal history category is II. (Id. at 3.) With said offense level of 18, the PSR calculated the resulting Guidelines sentencing range as 54-61 months' imprisonment, which included the consecutive 24 months required under Section 1028A. (Id.) The government agrees with the Guidelines calculations of the Probation Office as set forth in the PSR.

In its disclosed recommendation letter, the Probation Officer recommends a low end Guidelines sentence of 54 months of imprisonment, to be followed by 5 years of supervised release. (DE 45 at 2.)

As discussed infra, the government agrees with the Probation Officer that a Guidelines sentence is reasonable based on the serious crimes of identity theft and bank fraud. However, based upon the totality of the circumstances, the government believes a high end Guidelines sentence is more appropriate and reasonable. Thus, the government recommends that the Court sentence defendant to **61 months of imprisonment**, which is the high end of the applicable Guidelines range.

## II.  BACKGROUND

### A.  Procedural Background

Defendant pleaded guilty pursuant to a written plea agreement to counts 2 and 21 of the 22-count FSI in which he is solely named. (PSR ¶ 1.)  Count 2 of the Indictment charges defendant with violating Title 18, United States Code, Section 1344(2) (bank fraud), and count 21 charges defendant with violating Title 18, United States Code, Section 1028A(a)(1) (aggravated identity theft).  (Id. ¶¶ 2-3.)  In the plea agreement, the parties stipulated that the following guidelines calculations are correct:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| $250k < Loss < $550k: | +12 | [U.S.S.G. § 2B1.1(b)(1)(G)] |
| Use of ID to obtain another: | +2 | [U.S.S.G. § 2B1.1(b)(11)(c)(i)] |

(Id. ¶ 4; DE 40 (Plea Agreement) ¶ 14.)

### B.  Factual Background

#### 1.  Underlying investigation

IRS has been investigating a wide-ranging investigation into a money laundering and tax fraud scheme that involved more than 7,000 false tax returns claiming approximately $38,000,000 in tax refunds, of which approximately $14,000,000 were deposited and laundered.  (DE 1 at 3-4.)  Those tax returns were filed using stolen identity information.  (Id. ¶ 4.)

The participants in this money laundering/ID theft scheme used fraudulent identification to open hundreds of mailbox accounts and bank accounts, including using altered passports from the Republic of Armenia.  (Id. ¶ 6.)  Those mailbox and bank accounts were then used to launder the ill-gotten tax refunds.  (Id. ¶ 7.)

As described below, defendant was one of the schemers who opened mailbox and bank accounts by unlawfully using other persons' identification information, which were then used to launder fraudulently-obtained Treasury refunds.

### 2. Facts admitted by defendant

Defendant agreed to the following facts as part of the plea agreement and change of plea hearing:

- Identity H.S.:
  - On or August 8, 2012, defendant posed in the identity of H.S. to open a mailbox account in H.S.'s name at a mailbox rental business located in Encino, California.  When opening that mailbox account, defendant provided as identification a Republic of Armenia passport number XXXX30985 in the name of H.S. that had defendant's photograph on it.  When opening that mailbox account, defendant signed United States Postal Service Form 1583, "Application for Delivery of Mail Through Agent," in the name of H.S., dated August 8, 2012.  Defendant did not have lawful authority to use the means of identification of H.S., and defendant knew that H.S. was a real person.
  - On or about August 20, 2012, defendant posed in the identity of H.S. to open an account in H.S.'s name at Costco located in Van Nuys, California.  When opening that Costco account, Costco membership card number XXXXXX609054, defendant provided as identification a Republic of Armenia passport number XXXX30985 in the name of H.S., but which had defendant's photograph on it.
  - On or about August 30, 2012, defendant posed in the identity of H.S. to open a bank account in H.S.'s name at Union Bank, N.A.  When opening that bank account in the name of H.S., defendant

provided as identification a Republic of Armenia passport number XXXX30985 in the name of H.S. that had defendant's photograph on it. When opening that bank account in the name of H.S., defendant signed a signature card in the name of H.S., dated August 30, 2012. When defendant opened that bank account in the name of H.S., he did so as part of a scheme to obtain money or property from the bank, and acted with the intent to defraud. At that time of defendant's opening the bank account in the name of H.S. at Union Bank, N.A., Union Bank, N.A. was federally insured. Defendant did not have lawful authority to use the means of identification of H.S., and defendant knew that H.S. was a real person.

    o    On or about August 8, 20, and 30, 2012, defendant possessed and used the means of identification of H.S., namely H.S.'s name and signature and Republic of Armenia passport number, with intent to commit, to aid and abet the commission of, and in connection with the commission of, a violation of federal law, namely, Bank Fraud and Attempted Bank Fraud, in violation of Title 18, United States Code, Section 1344..

- <u>Other identities/means of identification</u>:
  - Defendant also opened additional mailbox and bank accounts posing in other identities, by using fraudulent identification in those identities. When opening mailbox or bank accounts while posing in another person's identity, defendant would also use one fraudulent type of identification to obtain a second type of identification in the other person's name. For example, defendant would use a foreign passport in the name of another person to obtain a Costco membership card also in that same person's name, but with defendant's photograph.

4

- <u>Defendant's admissions when interviewed in October 2015</u>:
    - In October 2015, federal agents interviewed defendant. During that interview, defendant admitted that in 2012, 2013, and 2014, he had opened several bank accounts and private mailboxes using fraudulent passports in other identities, and defendant said that he was paid for opening those bank accounts. Defendant also admitted depositing checks into other people's bank accounts. Further, defendant admitted that he knew it was illegal to open the bank accounts using the fraudulent identities and believed that the bank accounts he opened were used to launder money. Defendant admitted that he would provide a passport-sized photograph of himself to others in the scheme, who would then within several days provide him with a fraudulent passport with that same photograph, to use in opening the mailbox, Costco, and bank accounts. Last, defendant also admitted that he would obtain a Costco membership card in the name of the identity he was assuming and present that Costco card to banks and mailbox locations as a second form of identification.
- <u>Loss amount</u>: The applicable loss amount is approximately $254,000, which includes defendant's use of the means of identification of H.S. and R.P.

(DE 40 at 6-8.)

      **3.** **<u>Defendant committed bank fraud and identity theft when he opened mailbox and bank accounts by unlawfully using other individuals' identification information.</u>**

Using fraudulent identification in the names of multiple people, including altered foreign passports, defendant opened many mailbox accounts and bank accounts in those other people's names. In addition to using the fraudulent identification, defendant also

5

signed documents in the names of those other people, when posing in their identities.

In the plea agreement, defendant admitted that he unlawfully posed in the identity of H.S. to commit bank fraud.

Defendant also used other identities in the scheme.

Defendant unlawfully used those identities to open mailbox accounts and bank accounts to commit bank fraud. Defendant used Republic of Armenia passports in the names of those identities, which were altered to display his photograph. In addition, defendant sometimes obtained a second form of fraudulent identification in the other people's name, such as using altered passports to obtain a Costco membership card, which he would then use as an additional form of identification to open mailbox and/or bank accounts.

For example, in his plea agreement, defendant admitted that he posed in the identity of H.S. to open a mailbox account in H.S.'s name. Defendant did so by using a Republic of Armenia passport in the name of H.S., which had been altered to display defendant's photograph. Defendant also had obtained a Costco membership card in H.S.'s identity. Then, defendant used the fraudulent identification to open bank accounts in the name of victim H.S.

The parties agreed that the loss amount from the bank fraud and identity theft from using the H.S. and R.P.'s identities was approximately $254,000.[1] (PSR ¶ 23; DE 40 at 8.)

### 4. Additional fraudulent identity(ies)

In addition to the above two identities – H.S. and R.P. – that defendant fraudulently used to open various mailbox and bank

---

[1] As discussed *infra*, the updated loss figure is approximately $277,000.

6

accounts, defendant admitted during his October 2015 interview that he had also used another identity with the first name "Hakob," which he said he had used to fraudulently open a bank account (but not a mailbox). (Exh.-1 at 3.) Defendant further admitted that he had used other identities, but could not recall the names. (Id. at 3-4.) Defendant did admit, however, that he was paid somewhere around $13,000 to $14,000 for participating in the scheme, which comprised $150 for each mailbox and $300 per bank account. (Id. at 4.)

**III. THE PSR'S CALCULATIONS AND PROBATION'S RECOMMENDATION**

The PSR calculates defendant's Guidelines sentencing range as 54 to 61 months of imprisonment, based upon a total offense level of 18 and criminal history category of II, with the 24-month mandatory minimum consecutive sentence under Section 1028A. (DE 46 (PSR) at 3.) The Probation Officer recommends a low end Guidelines sentence of 54 months' imprisonment, followed by 5 years of supervised release. (DE 45 at 2.)

The PSR's guidelines calculations are summarized as follows (PSR paragraph identified in parentheses):

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] (¶ 38) |
| $250k < Loss < $550k:[2] | +12 | [U.S.S.G. § 2B1.1(b)(1)(G)](¶ 39) |
| Use of ID for another: | +2 | [U.S.S.G. § 2B.1(b)(11)(C)](¶ 41) |
| Acceptance of Responsibility | -3 | [U.S.S.G. § 3E1.1] (¶¶ 48-49) |
| **Total Offense Level:** | **18** | |
| Criminal History Category: | II | |

---

[2] In the plea agreement, the parties agreed to loss of approximately $254,000. (DE 40 at 8.) Several additional bank accounts have been located and analyzed, which caused the loss figure to slightly increase to $277,617. (Exh.-2.) This increased loss figure does not affect the agreed-to loss Guideline.

7

```
Guidelines Range:            30 to 37 months
                            +24 months consecutive (1028A)
                             54 to 61 months
```

## IV. GOVERNMENT'S POSITION REGARDING SENTENCING

### A. Summary of the Government's Position

The government agrees with the PSR's calculations that the applicable Guidelines sentencing range is 54-61 months of imprisonment. However, instead of the low end recommended by Probation (54 months' imprisonment), the government believes that the high end sentence (61 months of imprisonment) should apply in this case, based upon the totality of the facts discussed below.

Defendant posed in multiple different identities to open mailbox accounts and bank accounts through which fraudulently-obtained Treasury funds were laundered. Defendant used multiple different types of fraudulent identification to do so, including altered foreign passports and a Costco membership card. So, defendant committed the serious federal offense of bank fraud. By opening all of those bank accounts in the different identities, defendant facilitated the laundering of more than $250,000 of fraudulently obtained Treasury refunds. To make it worse, defendant committed identity theft to effectuate the bank fraud, thereby victimizing not only the banks, but also the individuals whose identities he illegally used in the bank fraud. Based upon all the facts of this case, a 61-month high-end Guidelines sentence is reasonable.

### B. The Section 3553(a) Factors Call For a Guidelines Sentence of 61 Months of Imprisonment.

Under 18 U.S.C. § 3553(a), the Court should impose a sentence "sufficient, but not greater than necessary, to comply with the

purposes" of sentencing as set forth in § 3553(a)(2). The Court is to consider various factors in determining the particular sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [¶] (2) the need for the sentence imposed –- [¶] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [¶] (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; . . . [¶] (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines]; . . . [¶] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and [¶] (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, the factors set forth above support the conclusion that a high-end Guidelines sentence of 61 months' imprisonment is a reasonable and appropriate sentence for defendant.

### 1. Nature, Circumstances, and Seriousness of the Offenses

Defendant opened up mailbox and bank accounts that were used in the tax fraud/money laundering scheme to launder hundreds of thousands of dollars of fraudulently-obtained Treasury funds. Further, to effectuate that bank fraud, defendant committed aggravated identity theft by unlawfully using the identification information of at least 2 victims.

In addition to using altered Republic of Armenia passports, defendant went even further and obtained a second form of identification – a Costco card in another identity. That means that defendant had to take one type of fraudulent identification (an altered passport) and go into Costco to obtain a second piece of identification in the name of the other person. Then, defendant opened bank accounts in those other identities. Ultimately, hundreds

of thousands of dollars of illicit funds were laundered through the bank accounts that defendant had opened.

Moreover, in addition to simply using the identification information to open accounts, defendant went further – he also signed in the names of the identities in which he was unlawfully posing.

Further, apart from using the fraudulent identification to open bank accounts, defendant also admitted to depositing checks into bank accounts as part of the scheme.

Simply put, defendant committed the serious federal crimes of aggravated identity theft and bank fraud, involving approximately a quarter million dollars.

### 2. Defendant's History and Characteristics

On balance, defendant's history and characteristics lack significant mitigation in this case. Defendant has a criminal history of II, which is adequately taken into consideration by the Guidelines.

Defendant is not a citizen of the United States. He entered the United States in March 1995 on a visa expiring in September 1995, and has remained in the United States illegally.

Further, according to the PSR, defendant reported being unemployed since 2007, and that prior to his arrest in this case, he was receiving public benefits. (DE 46 (PSR) § 73.) During his October 2015 interview, defendant admitted that he had been paid a total of approximately $13,000 to $14,000 to open the mailbox and bank accounts, pointing out that he was still owed approximately $2,000 more from the schemers. (Exh.-1 at 4.) Interestingly, as noted by the PSR, defendant has retained counsel. (DE 46 (PSR) § 75.)

**3.    Adequate Deterrence to Defendant and the Public**

The sentence in this case must convey to defendant that committing the federal felonies of bank fraud and aggravated identity theft are serious matters that result in years in federal prison. Moreover, when a person like defendant uses different identities to open multiple accounts – including different bank accounts – the sentence must be sufficiently severe to deter defendant himself from doing so in the future.  Moreover, more than $250,000 in identity theft proceeds flowed through the bank accounts that defendant had opened in the victims' names.

The need for public general deterrence also supports a Guidelines sentence.  People who steal identities – and go even further to open bank accounts in those stolen identities – need to know that they will be held accountable by the United States of America, and will be imprisoned for years in federal prison.

**4.    Need to Protect the Public from Defendant**

In light of defendant's criminal activity that involved posing in at least 2 victims' identities to open bank accounts used to launder tax fraud proceeds, the government believes that a 61-month sentence is warranted.  Further, that defendant started committing these serious federal crimes while he was illegally present within the United States does not bode well to believe that defendant will in the future be able follow the laws here.

**5.    Need to Avoid Unwarranted Sentence Disparities**

The recommended sentence falls within the Guidelines ranges calculated in the PSR and by the government, so it does not appear to be disparate to any other similarly-situated defendants who are sentenced for committing identity theft involving multiple different

11

identities, multiple different types of fraudulent identification, multiple bank accounts, and more than $250,000 in loss. In particular, in related cases,[3] the Court recently sentenced those defendants – involving losses at the +12 offense levels – to sentences of 27, 30, and 31 months, which after imposition of the 24-month mandatory minimum consecutive sentence under Section 1028A, supports the 61-month sentence recommended by Probation and the government for defendant here. In other words, the government recommends the high end of the Guidelines range (37 months) plus the mandatory minimum consecutive 24 months required under Section 1028A.

Probation recommended 5 years of supervised release, with which the government agrees.

**V.  RESTITUTION**

The source of the funds laundered through the bank accounts that defendant had fraudulently opened posing in other individuals' identities was fraudulently obtained federal income tax refunds. Thus, restitution of $277,617 should be ordered payable to the IRS.[4]

**VI.  CONCLUSION**

Identity fraud crimes continue to increase, with fraudsters purportedly stinging 15.4 million consumers in 2016 to the tune of

---

[3] United States v. Astvatsatryan, SA CR 16-00066-AG (31-month sentence based upon +12 loss of $389,000); United States v. Tabadzhyan, SA CR 16-00064-AG (30-month sentence based upon a +12 loss of $511,000); United States Mkrtchyan, SA CR 16-00055-AG (27-month sentence based upon a loss of $250,323).

[4] The government respectfully submits that the address for the restitution order should be: IRS RACS; Attn: Mail Stop 6261, Restitution; 333 W. Pershing Ave.; Kansas City, MO 64108. The approximately $277,000 in fraudulently-obtained Treasury funds were laundered through bank accounts that defendant had fraudulently opened in other identities at Bank of America, Union Bank, and Wells Fargo.

more than $16,000,000,000.  E.g., "Identity theft, fraud cost consumers more than $16 billion," CNBC (02/01/2017);[5] "Credit Card Fraud (2017)," National White Collar Crime Center (2017).[6]  No one is immune from the ever growing scourge of identity theft.  E.g., Cybersecurity Resource Center ("Approximately 21.5 million individuals were impacted by the cyber incident involving background investigation records OPM announced in 2015. Approximately 4.2 million individuals were impacted by the separate but related cyber incident involving personnel records OPM announced in 2015.")[7]

Even though he was illegally present in the United States, defendant nonetheless committed serious federal felonies of bank fraud and aggravated identity theft, by using altered foreign passports to pose in different identities to open bank accounts that were used to launder hundreds of thousands of dollars in proceeds of tax fraud.  First, defendant would open mailbox accounts posing in the victims' identities.  Then, defendant used those mailbox addresses to open bank accounts in those other people's names, which were then used to launder fraudulently-obtained tax refunds. Defendant did not just open one fraudulent account or use just one piece of fraudulent identification.  Rather, defendant used different types of fraudulent identification as part of the scheme, including altered Republic of Armenia passports and a Costco membership card in the names of the victims.  The applicable loss exceeds $250,000.

---

[5] Available at https://www.cnbc.com/2017/02/01/consumers-lost-more-than-16b-to-fraud-and-identity-theft-last-year.html (last visited 09/05/2017).

[6] Available at https://www.nw3c.org/docs/research/credit-card-fraud-2017.pdf (last visited 09/05/2017).

[7] Available at https://www.opm.gov/cybersecurity (last visited 01/22/2018).

13

Defendant admitted that he was paid approximately $13,000 to $14,000 for participating in the scheme. Both specific and general deterrence mandate a sizable prison sentence.  The government agrees with Probation that a Guidelines sentence is reasonable, but believes that a high-end Guidelines sentence of 61 is more appropriate than a low end sentence.

For the foregoing reasons, the government respectfully requests that this Court impose the following sentence:

1. 61 months of imprisonment;
2. Five years of supervised release, with all the terms recommended by the Probation Office;
3. Restitution of $277,617 to the IRS; and
4. $200 special assessment.